Cameron Dee SEWELL, Appellant,

v.

DALLAS INDEPENDENT SCHOOL DIS-
TRICT and the City of Dallas Park and
Recreation Department, Appellees.

No. 05-86-00233-CV.

Court of Appeals of Texas,
Dallas.

Jan. 20, 1987.

Rehearing Denied April 14, 1987.

M.J. (Ike) Vanden Eykel, Ted Johnson,
Dallas, for appellant.

Carroll R. Graham, Donna M. Atwood,
Dallas, for City of Dallas.

W. Edward Walts, Scott B. Aston, Dal-
las, for Dallas Independent School Dist.

Before STEPHENS, HOWELL and
McCRAW, JJ.

STEPHENS, Justice.

Cameron Dee Sewell (Sewell) appeals
from a judgment notwithstanding the ver-
dict granted in favor of the Dallas Indepen-
dent School District (DISD) and City of
Dallas—Park and Recreation Department
(City). In his sole point of error, Sewell
contends that the trial court erred in over-
ruling his motion for judgment on the ver-
dict because the evidence raised a fact
question for the jury as to breach of the
condition stated in the deed at issue. We

agree. Consequently, we reverse the judgment of the trial court and render judgment for Sewell on the jury verdict.

This case arose from the following undisputed facts. On or about November 17, 1954, Vincent Sewell executed and delivered to Rylie Independent School District (RISD) a deed conveying the tract of land in question. The deed contains the following language:

This conveyance is made and accepted subject to the following condition: The herein conveyed property shall be used for school purposes only, and in the event of the breachof [sic] this condition, title to the hereinafter described propertyshall [sic] revert to and vest in the grantor herein, his heirs and assigns.

After the land was conveyed to it, RISD constructed an educational facility designated as "Rylie School" on the tract and conducted classes therein. In 1959, RISD was consolidated with DISD. It is undisputed that DISD, at this point, became RISD's successor-in-interest to the tract of land in question. On July 23, 1974, Vincent Sewell executed a warranty deed giving Cameron Dee Sewell the reversionary interest in the tract of land described in the November 17, 1954 deed.

In 1982, as part of a judgment rendered against DISD in a desegregation suit, the United States District Court for the Northern District of Texas ordered that the students then attending Rylie School be transferred to two nearby schools. As a result of this order, Rylie School was closed.

After Rylie School was closed in 1982, DISD continued to utilize the land in question for a variety of school purposes, such as a storage facility for school equipment and supplies, and as major support facility for DISD schools. Then, in November 1983, DISD leased a majority of the land in question to the City of Dallas. DISD asserts that their intent in leasing the property was to prevent vandalism so that the premises would be in good repair when the school was reopened. The lease provides in relevant portion:

WHEREAS, the Dallas Independent School District has advised the City of Dallas and Recreation Board that the Rylie Elementary School is *not currently utilized for school purposes;*

. . . .

DISD agrees to lease, and does hereby lease to City the Rylie Elementary School and surrounding school grounds ("the school"), for use by City in the implementation of a program of recreation services under the direction of the City of Dallas Park and Recreation Board.

. . . .

The term of this agreement shall be for a period of twenty (20) years which subject [sic] to further extension at the expiration thereof by mutual consent of the parties to this agreement.

(emphasis added). City opened Rylie School as a recreation center in February 1983. The evidence is undisputed that activities such as baseball, karate, soccer, tennis, jazzercise, and square dance lessons were conducted at the recreation center. Furthermore, the parties agree that the recreation center was available to citizens of the community for community meetings, social events, weddings, and family reunions.

In March 1984, Cameron Dee Sewell notified DISD and the City of Dallas that he was exercising his right of entry because they had breached the condition in the November 1954 deed providing that the tract of land be used for school purposes only. DISD and the City of Dallas refused to surrender possession of the tract of land to Sewell. Sewell instituted this suit.

By order signed by the trial court on August 13, 1985, a separate trial was ordered as to all issues of law and fact relating to Sewell's claim for the fair rental value of the Rylie School Property and of all issues of law and fact relating to the claim of DISD for an allowance for the various improvements constructed on the Rylie School Property, or alternatively, for the right to remove all personalty and fixtures from the property. The trial court further ordered that such trial was to be had only after the completion of a trial and entry of a verdict on all issues of law and fact relating to Sewell's claim against

DISD and the City for title to and possession of the Rylie School Property.

In the initial trial on Sewell's claim for title to and possession of the tract of land in question, the following special issue was submitted to the jury:

QUESTION 1

Do you find from a preponderance of the evidence that on or after November 9, 1983, the property involved in this case was not used for school purposes only? Answer by placing an "X" before one of the following:

  _X_  Yes, the property was not used for school purposes only.

  ____  No, the property was used for school purposes only.

The only other special issue submitted to the jury asked what amount of money, if any, would reasonably compensate Sewell's attorney for necessary legal services rendered in connection with the case. The jury awarded attorney's fees to Sewell. Since the jury answered the special issues in his favor, Sewell moved for judgment on the verdict. DISD and City moved for judgment notwithstanding the verdict. The trial court granted DISD and City's motion for judgment notwithstanding the verdict and issued a memorandum opinion and order setting forth the court's reasons for granting judgment notwithstanding the verdict.

Sewell contends that the trial court erred in overruling his motion for judgment on the verdict because the evidence raised a fact question for the jury concerning breach of the condition stated in the deed. DISD and City argue that the trial court properly granted judgment notwithstanding the verdict because the record contains no probative evidence that DISD failed to use the property for "school purposes only."

▪ The parties agree that their rights relative to the disputed property stem from and are governed by the November 1954 deed. In determining whether the trial court erred in granting judgment notwithstanding the verdict, we must first decide the proper interpretation and construction of the condition contained in the deed. We have determined that the condition recited in the deed is a condition subsequent. *See City of Dallas v. Etheridge,* 152 Tex. 9, 12, 253 S.W.2d 640, 641–42 (1952) (deed granted upon the condition that the land be used for park purposes only created a condition subsequent); *Davis v. Skipper,* 125 Tex. 364, 368, 83 S.W.2d 318, 319–20 (Tex. Comm'n App.1935, op. adopted) (deed conveying a lot on condition that "said premises shall be used for church purposes only and that in case the same is abandoned as such, that the title shall be reverted in the said H.T. Elder," created a condition subsequent); *Pitts v. Camp County,* 120 Tex. 558, 561–62, 42 S.W.2d 853, 854–55 (Tex. Civ.App.—Texarkana 1931, writ ref'd) (deed conveying lots "as a place for erecting the courthouse, and any other public buildings which may be necessary for said County of Camp" and containing the following language, "[n]evertheless, the condition of this conveyance is such that if the county seat should be hereafter removed to any place in the said county, then, and in that case, this obligation shall be null and void, and the property herein conveyed shall revert to the said W.H. Pitts, his heirs or assigns" created a condition subsequent); *Field v. Shaw,* 535 S.W.2d 3, 5–6 (Tex.Civ.App.—Amarillo 1976, no writ) (deed specifying that a gin be constructed by September 1, 1949, or the land immediately reverted to the grantor and specifying that "the land herein conveyed is expressly restricted to that of the operation of a Cotton Gin and that no other business shall ever be operated thereon and in the event this restriction is violated, the land herein conveyed shall revert to the grantor herein" constituted a condition subsequent); *McCarthy v. City of Houston,* 389 S.W.2d 159, 161 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.) (deed containing provision that grantee, its assigns or successors in office, would not, for a period of 999 years, burden the surface fee conveyed with any above-ground fences, buildings, or structures and further providing that in the event of any violation of the condition, the conveyance would be void and the land would revert to the grantors,

their heirs or assigns, created condition subsequent). We recognize the well accepted and longstanding policy in Texas that conditions subsequent are not favored by the courts, and the promise or obligation of the grantee will be construed as a covenant unless an intention to create a conditional estate is clearly and unequivocally revealed by the language of the instrument. *Hearne v. Bradshaw*, 158 Tex. 453, 456–57, 312 S.W.2d 948, 951 (1958); *Haskins v. First City National Bank*, 698 S.W.2d 754, 757 (Tex.App.—Beaumont 1985, no writ); *see also Humphrey v. C.G. Jung Educational Center*, 714 F.2d 477, 480 (5th Cir.1983); *McCarthy*, 389 S.W.2d at 163; *Hudson v. Caffey*, 179 S.W.2d 1017, 1019 (Tex.Civ.App.—Texarkana 1944, writ ref'd w.m.). However, we hold that the conditional language of the deed in the present case clearly and unambiguously creates a condition subsequent. *Cf. W.F. White Land Co. v. Christenson*, 14 S.W.2d 369, 370 (Tex.Civ.App.—Fort Worth 1928, no writ) (deed containing reverter language and also providing "[t]he conditions herein contained are intended to and shall run with the land, and ... should grantee, his heirs, executors, administrators or assigns, or any person claiming under him, violate any of the foregoing covenants, then W.F. White Land Company, or its successors, or any owner of any lot herein, shall have the right to enjoin the doing of the same, and in the event the violation has already taken place, ... then such remedy shall extend to the removal of the improvements placed on said premises...." was ambiguous because of the deed's reference to the restrictions as "covenants" and the deed's provision for remedies other than reverter); *Malloy v. Newman*, 649 S.W.2d 155 (Tex.App.—Austin 1983, no writ) (conditional language of deed was ambiguous because the deed referred to the restrictions as covenants and because there was no manner in which one of the restrictions, that the property not be subdivided without the consent of seventy-five percent of the owners of the other tracts in Bastrop Woods, could be enforced).

We must next determine whether there was any legally sufficient evidence introduced at trial that DISD breached the "for school purposes only" language of the deed thereby triggering Sewell's right of reverter under the condition subsequent contained in the deed. If there was any legally sufficient evidence introduced that DISD failed to use the property in question for school purposes only, then the trial court erred in granting judgment notwithstanding the verdict. *See Gulf, Colorado & Santa Fe Railway Co. v. Deen*, 158 Tex. 466, 470–71, 312 S.W.2d 933, 937, *cert. denied*, 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958).

The parties agree that DISD leased a majority of the property in question to City for the purpose of establishing a recreational center. The evidence is undisputed that City did in fact open a recreational center on the property and that various activities and sports were conducted at the recreational center. DISD and City argue that since Rylie School was closed pursuant to a federal court order, DISD was not violating the "for school purposes only" language by leasing the property to City because DISD leased the property to avoid vandalism of the vacated premises. DISD and City rely on *City of Dallas v. Etheridge*, 152 Tex. 9, 253 S.W.2d 640 (1952), to support this proposition. In *Etheridge*, a condition subsequent contained in a deed dated January 29, 1929, provided in relevant portion:

The use and occupancy of said tract of land is granted upon the following conditions, to wit:

"(1) That the said City of Dallas shall use said land for park purposes only.

\* \* \* \* \* \*

"(5) All of the above provisions are made a part of the consideration for this grant, and a violation of any of them shall, at the option of said City and County of Dallas Levee Improvement District, terminate this grant or agreement...."

*Etheridge*, 253 S.W.2d at 641–42. In 1929 or 1930, the City of Dallas cut a road

through the property. The *Etheridge* court stated,

> There is no evidence in the record that this road was built to further the public's use and enjoyment of the property as a park. On the contrary the evidence in the record shows conclusively that such was not the purpose of the road. The use of a part of the property as a public road under the facts shown was *inconsistent with the purpose to which the City was required to devote the property* and was a breach of the condition of the easement.

*Etheridge,* 253 S.W.2d at 642 (emphasis added). DISD and City rely on the emphasized language quoted above to assert that their recreational center use of the Rylie School property is *consistent* with the deed's "for school purposes only" language and therefore not violative of the condition subsequent. We cannot agree.

We do not believe that the court in *Etheridge* intended to hold that proof of use of the property in a manner *inconsistent* with the conditional language is an element necessary to prove breach of a condition subsequent. Rather, the court in *Etheridge* emphasized that building a road through the property clearly constituted a breach of the "for park purposes only" language because building a road is inconsistent with preserving land for a park. The *Etheridge* court neither says, nor implies, that *only* "inconsistent uses" will constitute a breach of a condition subsequent, as DISD and City argue.

We hold that based on the record before us, there was ample legally sufficient evidence introduced at trial to support the submission of special issue number one to the jury. The trial court erred in granting judgment notwithstanding the verdict. Sewell's point of error is sustained.

■ We will address DISD and City's contention that since DISD at all times has used a portion of the property in question as "a storage facility for its school equipment *and* supplies *and* as a maintenance facility and as a major support facility for DISD schools" it has not abandoned the property and hence has not breached the "for school purposes only" language. Sewell admits that DISD has continuously used a portion of the property as a storage and maintenance facility and that such use constitutes a school purpose. DISD and City cite *Davis v. Skipper,* 125 Tex. 364, 83 S.W.2d 318 (Tex.Comm'n App.1935, opinion adopted), and *Daggett v. City of Fort Worth,* 177 S.W. 222 (Tex.Civ.App.—Amarillo 1915, no writ), in support of their argument. We find neither of these cases persuasive. In *Davis,* the deed in question stated, "[S]aid premises shall be used for church purposes only and that in case the same is *abandoned* as such, that title shall be revested in the said H.T. Elder...." (emphasis added). The court of appeals and the Commission of Appeals both held that in order to prove breach of the above condition, the grantor's heirs had the burden of showing that the property in question had been abandoned. The *Davis* court in effect held that when a deed contains abandonment language, the property will not revert unless abandonment is shown. The deed in the case at bar does not contain any abandonment language; thus, *Davis* is inapposite.

In *Daggett* the deed provided that "said premises shall be used for free school purposes, and that said City of Fort Worth will erect a suitable school house or school houses thereon, or the above-described premises shall revert...." The grantors instituted a law suit to recover the property by way of the reversionary clause in the deed, on the ground that the same had been abandoned for school purposes. The *Daggett* court held that the grantors failed to prove abandonment and that hence the property did not revert. The *Daggett* case does not control the case presently before us for several reasons. First, the *Daggett* deed does not say "school purposes *only.*" Therefore, if the property in *Daggett* was used at all, for any free school purposes, the condition would not be breached. Secondly, the grantors in *Daggett* alleged abandonment to prove breach of the condition. In other words, the grantors in *Daggett* attempted to show that since the property was abandoned, it was not being used

for "free school purposes." In the case at bar, the grantor's successor-in-interest is not alleging that an act of *abandonment* constitutes a breach of the condition but is alleging that the act of *conducting non-school purpose activities* on the property constitutes a breach of the condition. Hence, *Daggett* is distinguished. The fact that DISD has not abandoned the property in question is irrelevant because Sewell did not attempt to claim breach of the condition on the grounds of abandonment.

Sewell's point of error is sustained. The judgment of the trial court is reversed and judgment is rendered on the jury verdict in favor of Sewell.